IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Nellie G. Terry, ) | |
| ) | Civil Action No. 8:04-0310-26BI |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Self Regional Medical Center, ) | |
| ) | |
| Defendant. ) | |
| ) | |

       This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In her complaint, the plaintiff alleges causes of action for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, against the defendant Self Regional Medical Center ("Self" or "defendant").

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

       The plaintiff began working for the defendant as a licensed practical nurse ("LPN") on March 20, 2001 (pl. dep. 52).  On May 26, 2001, the plaintiff injured herself while helping to roll over a patient who weighed 544 pounds (pl. dep. 56-57).  She "felt something pop" in her back (pl. dep. 56-57).  The plaintiff received medical treatment and was out of work until August 2001.  At that time, she returned to work under the defendant's modified/ light duty program, which allows employees who have been injured on the job to continue

their employment in temporary, light duty positions while undergoing medical treatment. Positions are available for three-month intervals, subject to reevaluation of continued qualification. Once an employee reaches maximum medical improvement ("MMI"), the employee is no longer eligible for participation in the program (Susan Jones dep. 23-25; pl. dep. 63). The plaintiff was assigned to work in the defendant's lab and imaging center in a non-nursing position while in the modified/light duty program (pl. dep. 53-54, 63-64).

On November 19, 2001, the defendant's treating physician, Dr. Kevin Kopera, opined that the plaintiff had reached MMI. Dr. Kopera performed a functional capacity evaluation ("FCE") and released the plaintiff with permanent restrictions limiting her occasional lifting to 25 pounds and frequent lifting to 15 pounds. He restricted the plaintiff to occasional bending, squatting, and climbing; her standing and walking to 6-8 hours a day and sitting to 6-8 hours a day. He also noted that the plaintiff could work 12-hour shifts. Dr. Kopera issued a permanent partial impairment rating of 5% to the spine (pl. dep. 62-68; def. m.s.j., ex. C).

The defendant's job description for LPN positions notes that LPNs are often required to lift up to 200 pounds, carry up to 50 pounds, push up to 400 pounds, and pull up to 400 pounds (def. m.s.j., ex. D). The defendant determined that the plaintiff could not safely perform the essential functions of an LPN, with or without reasonable accommodation (Jones dep. 12, 29-30, 68-69; Nancy Strawhorn dep. 28-29).

The defendant gave the plaintiff the choice of voluntary termination or 30 days of personal leave to identify another job in the hospital for which she was qualified and could safely perform given her work restrictions (pl. dep. 80-81; Jones dep. 25-26, 38-40; pl. resp. m.s.j. 2). The defendant encouraged the plaintiff to review the job opening list to see if there were any positions for which she was qualified in light of her medical restrictions (pl. dep. 91-92; Kim Steele dep. 34, 39). The defendant arranged an interview for the plaintiff for a pharmacy tech position (pl. dep. 73-74). When she went for the interview, the

plaintiff was told by the pharmacist that he had received inquiries from more qualified candidates, and she did not get the position (pl. dep. 74). The plaintiff claims that she mentioned to Ms. Strawhorn a couple of positions that she thought she might be qualified for in light of her restrictions. These positions were the pharmacy position and position taking IV fluids to the floors where they were needed. The plaintiff claims that Ms. Strawhorn told her that the IV fluids position would involve work that she could not do given her medical restrictions (pl. dep. 83-84).

The plaintiff told Kim Steele, employment coordinator for the defendant, that she felt she was physically able to return to her job as an LPN (pl. dep. 68). According to Ms. Steele, the plaintiff told her that she disagreed with the work restrictions placed on her by Dr. Kopera. She also told Ms. Steele that she had been lifting 25 pounds during the time she worked at the imaging center while she was in the light duty program (Steele dep. 37). The defendant encouraged the plaintiff to contact her doctor about reducing or eliminating her restrictions (pl. dep. 68; Steele dep. 39-40). According to Ms. Steele, the plaintiff told her that she would "get back with [her]," but the plaintiff never did (Steele dep. 39).

The defendant scheduled a second FCE for the plaintiff; however, she did not go to the FCE appointment because, according to her testimony, her husband was working and she could not drive to Greenville (pl. dep. 69-70). The defendant also extended the plaintiff's leave through January 12, 2002. According to Susan Jones, the human resources coordinator for the defendant, because the plaintiff failed to identify another position for which she was qualified during her personal leave, the defendant deemed the plaintiff to have voluntarily terminated her employment as of January 12, 2002 (Jones dep. 12-13).

The plaintiff hired legal counsel, who wrote Ms. Steele on December 4, 2001; January 12, 2002; and January 22, 2002. In the December 4th letter, plaintiff's counsel stated that the plaintiff's lifting restriction was "the only restriction to which she remains subject" and that the plaintiff was "willing and able to return to work as an LPN." Plaintiff's

3

counsel requested information regarding the reason the plaintiff had not been allowed to return to work and further requested that the defendant provide "the specific details of each and every step the Hospital took to conduct the required reasonable accommodations analysis." In the January 12th letter, the plaintiff's counsel noted that no response had been received to the prior letter and asked for an explanation as to why the plaintiff had not been returned to her former position. In the January 22nd letter, the plaintiff's counsel noted that no response had been received to the prior letters (pl. resp. m.s.j., ex. 1).

After her termination in January 2002, the plaintiff worked at Abbeville Nursing Home for several weeks and then for Maxim Healthcare for approximately seven months as a private duty nurse for a terminally ill child (pl. dep. 32-34, 44). She currently works full-time as an LPN for the South Carolina Department of Corrections and part-time as an LPN at Abbeville Hospital (pl. dep. 34-35, 47-48).

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might

return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

5

**ANALYSIS**

The ADA prohibits an employer with 25 or more employees from discriminating "against a qualified individual with a disability because of the disability . . . ." 42 U.S.C. §12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* §12111(8). The statute defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* §12102(2). "Substantially limits" means, *inter alia*, "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j)(1)(ii). Examples of "major life activities" are "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id*. §1630.2(I).

In her first cause of action, the plaintiff alleges that the defendant refused to accommodate her alleged disability and wrongfully terminated her from her position as an LPN (comp. ¶¶ 21-37). In her second cause of action, the plaintiff alleges that the defendant refused to reasonably accommodate her and wrongfully terminated her from her position as an LPN because she was "regarded as" having a disability (comp. ¶¶ 38-43).

The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is appropriate for this case. The allocation of proof is: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) the defendant-employer responds with a legitimate non-discriminatory reason for its actions; and (3) the plaintiff-employee may then establish that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Id.* at 802-03. *See Rowe v. Marley Co.*, 233 F.3d

6

825, 829 (4th Cir. 2000) (employing the framework articulated in *McDonnell Douglas* to analyze claims under the ADA).

In a failure to accommodate case, a plaintiff establishes a *prima facie* case by showing that (1) she is an individual who had a disability within the meaning of the statute; (2) the employer had notice of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999)).

In order to establish a *prima facie* case of wrongful discharge, the plaintiff must show: (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001).

### *First Cause of Action - Plaintiff's Claim That She Is Disabled*

The first issue before the court is whether the plaintiff is a "qualified individual with a disability" in order to fall within the ADA's protected class, which is the first element in claims for both failure to accommodate and wrongful discharge. In order for her first cause of action, in which she claims that she is disabled, to survive, the plaintiff must demonstrate that she has a "physical or mental impairment that substantially limits one or more major life activities." She has not met this burden.

The plaintiff argues that her 5% permanent partial impairment rating of the spine, her permanent lifting restrictions of 25 pounds occasionally and 15 pounds frequently, her restrictions from bending, squatting, and climbing to an occasional basis,

7

and walking (6-8 hours a day) and sitting (6-8 hours a day) restrictions, disable her with respect to the major life activity of working (pl. resp. m.s.j. 10-13).

As noted by the defendant, the defendant has worked consistently in the healthcare field since the time of her employment with the defendant. After her termination in January 2002, the plaintiff worked at Abbeville Nursing Home for several weeks and then for Maxim Healthcare for approximately seven months as a private duty nurse for a terminally ill child (pl. dep. 32-34, 44). She currently works full-time as an LPN for the South Carolina Department of Corrections and part-time as an LPN at Abbeville Hospital (pl. dep. 34-35, 47-48). *See Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir. 2002) (finding that obtaining a new job is "evidence that an impairment is not substantially limiting").

Furthermore, the plaintiff's medical restrictions as outlined by Dr. Kopera do not amount to a substantial limitation of a major life activity. *See, e.g., Wiliams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996).[1] In *Williams*, the Fourth Circuit Court of Appeals examined the disability rating and lifting restrictions of a plant worker who had suffered a neck and back injury in a car accident. She was released to work with the restrictions that she refrain from lifting more than 25 pounds and from pushing or pulling heavy objects. *Id.* at 348. The plaintiff's treating physician rated her impairment as a 5% permanent partial disability of the back. *Id.* After reciting the EEOC's regulatory provisions providing guidance as to when an impairment is "substantially limiting," the court stated:

> Like the Eighth Circuit, we hold, as a matter of law, that a twenty-five pound lifting limitation - particularly when compared to an average person's abilities - does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity.

---

[1] *Williams* was abrogated by *Baird v. Rose*, 192 F.3d 462, 469-70 n.8 (4th Cir. 1999), on the issue of the "standard of causation" applicable to an ADA claim. However, numerous courts have continued to cite *Williams* with approval on the question of whether a disability exists under the ADA. *See, e.g., Pollard*, 281 F.3d at 470-71.

*Id.* at 349 (citing *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1319 (8th Cir. 1996) (holding that a 25-pound lifting restriction, among other things, did not "significantly restrict" major life activities)). *See also Pollard*, 281 F.3d at 470-71 (concluding that a plaintiff with restrictions prohibiting her from lifting more than 25 pounds or bending repetitively did not suffer from a permanent impairment that substantially limited any major life activity); *Paris v. Arc/Davidson County, Inc.*, 307 F.Supp.2d 743, 758 (M.D. N.C. 2004) (finding that an inability to lift heavy objects or do any repetitive motion including bending and pulling does not render a plaintiff substantially limited in a major life activity); *Stewart v. Weast*, 228 F.Supp.2d 660, 662-63 (D. Md. 2002) (stating that "a person is not substantially limited in a major life activity because she is limited to lifting ten to fifteen pounds"); *Thomas v. N. Telecom, Inc.*, 157 F.Supp.2d 627, 631-32 (M.D. N.C. 2000) (finding that a disability rating of 15% and 20% in both arms, 20-pound lifting restriction, and restriction prohibiting repetitive motions do not constitute a disability under the ADA); *Washington v. George C. Sharp, Inc.*, 124 F.Supp.2d 948, 953-54 (E.D. Va. 2000) (holding that a 30-pound lifting limitation does not significantly restrict the major life activities of lifting and working).

The plaintiff argues that her situation is different than that of the plaintiffs in the above-referenced cases in that "Dr. Kopera's report in the present case was not limited solely to a lifting restriction and an impairment rating. . . . He also restricted her bending, squatting, and climbing to an occasional basis, limited her standing and walking to 6-8 hours a day . . . and reduced her sitting to 6-8 hours per day . . ." (pl. resp. m.s.j. 12). The plaintiff's limitations are similar to the limitations imposed on the plaintiff in *Paris,* cited above. In that case, the court noted that "the Fourth Circuit has repeatedly held that basic lifting restrictions *and other associated limitations* do not constitute evidence of a permanent impairment that substantially limits any major life activity under the ADA." *Paris*, 307 F.Supp.2d at 758 (emphasis added). The plaintiff in *Paris* submitted letters from three doctors who opined on the plaintiff's "ability to lift, push, bend frequently, and perform other

9

repetitive activities." *Id.* The court held that the plaintiff's "inability to lift heavy objects or do any repetitive motion including bending and pulling" did not substantially limit the plaintiff in a major life activity. *Id.* at 758-59. *See also Thomas*, 157 F.Supp.2d at 631-32 (granting summary judgment on ADA claim where the plaintiff was instructed "not to lift more than twenty pounds and to avoid repetitive motions"). As noted by the defendant, Dr. Kopera chose the *least* restrictive hourly categories provided on the work capacity form and then wrote in: "May work 12 hour shifts" (def. m.s.j., ex. C). Additionally, there is no evidence that the associated limitations listed on the plaintiff's work capacity form played any role in the actions or decision-making process at issue in this case.

The plaintiff's medical restrictions are not substantially limiting as a life activity, and the plaintiff has not shown that she is substantially limited in the life activity of working. Based upon the foregoing, the plaintiff cannot show that she is disabled under the ADA. Accordingly, summary judgment should be granted as to her first cause of action.

***Second Cause of Action - Plaintiff's Claim That She Was "Regarded As" Disabled***

In her second cause of action, the plaintiff claims that the defendant denied her a reasonable accommodation and discharged her because she was "regarded as" disabled. *See* 42 U.S.C. §12102(2)(C). In order to survive summary judgment under this theory, the plaintiff must establish that (1) the defendant "mistakenly believe[d]" that she had a physical impairment that substantially limited one or major life activities, or (2) the defendant "mistakenly believe[d] that an actual, nonlimiting impairment substantially limit[ed] one or more life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). In either case, "it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* "[A]n employer is free," however, "to decide that some

limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Id.* at 490-91 (emphasis in original). The plaintiff cannot meet her burden.

As noted by the plaintiff, the defendant was aware that the plaintiff was hurt on the job and that Dr. Kopera had issued medical restrictions, and thus the defendant was aware of the plaintiff's physical impairment. Accordingly, only the second scenario set forth in *Sutton* applies to the present case (pl. resp. m.s.j. 7). The defendant argues that it did not entertain any misperceptions about the plaintiff's condition and did not act upon any mistaken beliefs as to her limitations (def. m.s.j. 14-17). The defendant relied at all times upon the restrictions imposed by Dr. Kopera. *See Pollard*, 281 F.3d at 471, n.5 (finding no evidence that the plaintiff was "regarded as" disabled where the employer did not entertain any misperceptions about her condition, which included a 25 pound lifting restriction). In her deposition, the plaintiff testified as follows:

> Q: Do you have any evidence or reason to believe that the decision that Self made not to return you back to your LPN position was based on anything other than the medical restrictions that were issued by Dr. Kopera?
>
> A: I have no reason to think there was anything else.

(Pl. dep. 68).

> Q: Miss Terry, do you have any evidence that Self - that Self regarded you as being limited in anything more than lifting based on - you know, on your medical restrictions?
>
> A: No, sir.
>
> Q: Do you have any reason to believe that Self believed that your back impairment at 5 percent would restrict you in any activities other than lifting, as stated in your medical restrictions?
>
> A: No, sir.

(Pl. dep. 112-13).

11

The defendant acted consistently with its understanding that the plaintiff was not disabled. As noted by the defendant, it employed the plaintiff for months following her injury in its modified/light duty program, wherein she worked in the laboratory organizing and transporting lab samples (pl. dep. 62-65). Once she reached MMI and the hospital determined she could not return to her previous position because her restrictions violated the job requirements, the plaintiff was told to look at job listings for other available positions for which she was qualified (pl. dep. 92). According to the plaintiff, there was "none that [she] was qualified for" (pl. dep. 92). The defendant identified the pharmacy tech position as a possibility and scheduled an interview for the plaintiff (pl. dep. 73-74). *See Tuten v. Clariant Corp.*, No. 98-1299, 1999 WL 137644, *2 (4th Cir. 1999) (unpublished) (finding "no evidence" that the plaintiff was regarded as disabled where the employer provided the plaintiff with a temporary position and then attempted to identify a permanent position for which he was qualified). Further, because the plaintiff stated that she thought she could perform her job and the restrictions imposed by Dr. Kopera were not accurate, the defendant encouraged the plaintiff to have another FCE and even scheduled another FCE for the plaintiff, but she did not go to the appointment (pl. dep. 68-69).

In a similar case decided by the Ninth Circuit Court of Appeals, the court considered the claim of a registered nurse who had suffered a neck and back strain that resulted in the imposition of restrictions prohibiting her from lifting 25 pounds on a continuous basis, more than 50 pounds twice a day, and more than 100 pounds once a day. *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539 (9th Cir. 1997). Once the plaintiff's restrictions became permanent, the hospital determined that the plaintiff could not safely provide total patient care and placed her on leave pending the identification of another available position. *Id.* The plaintiff did not obtain another position and was terminated.

As later explained by the district court in *Powderly v. Muir*, 1999 WL 447598, *7 (N.D. Ca. 1999), the Ninth Circuit held that the plaintiff was not "regarded as" disabled

for three reasons: (1) if the hospital believed that the plaintiff was incapable of lifting 25 pounds, it does not follow that the hospital regarded her as disabled, because a 25-pound restriction does not amount to a substantial limitation on the ability to lift; (2) regardless of any comments on the plaintiff's inability to provide total patient care, the employer's decision was based upon the physical restrictions imposed by her doctor, which does not indicate that the employer regarded her as disabled; and (3) the hospital had informed the plaintiff of other job opportunities in the hospital, indicating that the hospital did not regard her as disabled. *Id. See Thompson*, 121 F.3d at 541 (citing *Williams*, 101 F.3d at 349).

Based upon the foregoing, the plaintiff cannot show that she was "regarded as" disabled. Accordingly, summary judgment should be granted as to her second cause of action.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendant's motion for summary judgment be granted. The defendant's pending motion to strike plaintiff's surreply will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, the motion will be rendered moot.

s/Bruce H. Hendricks
United States Magistrate Judge

March 7, 2005

Greenville, South Carolina

13